286 So.2d 144 (1973)
Louis BUVENS, Plaintiff-Appellant,
v.
Felix BUVENS et al., Defendants-Appellees.
No. 4396.
Court of Appeal of Louisiana, Third Circuit.
November 30, 1973.
Makar & Whitaker by John Makar, Natchitoches, for plaintiff-appellant.
Thomas A. Self, Many, Brittain & Williams, by Jack O. Brittain, Natchitoches, John P. Godfrey of Godfrey & O'Neal, Many, Gist, Methvin & Trimble by DeWitt T. Methvin, Jr., Alexandria, for defendants-appellees.
Before FRUGÉ, MILLER, and DOMENGEAUX, JJ.
*145 FRUGÉ, Judge.
This is an action for damages for false imprisonment, invasion of privacy, embarrassment and humiliation allegedly suffered by plaintiff, Louis Buvens. An action was filed against Felix Buvens, Dr. Lloyd H. Murdock, and Dr. James L. Sauls. Each of the defendants filed exceptions of prescription and Dr. Murdock filed exceptions of no cause or right of action and a motion for security of costs. The trial court sustained the exception of prescription and dismissed plaintiff's suit. Plaintiff appeals. We affirm.
Plaintiff filed this petition on June 24, 1964, alleging that upon May 6, 1963, he was arrested by the Sabine Parish Sheriff's Department and incarcerated in the parish jail, where he remained for approximately ten days and was then transferred to the Central Louisiana State Hospital in Pineville, Louisiana, where he was committed for an additional 58 days. Plaintiff alleges that he was incarcerated without just cause and that he was committed to Central Louisiana State Hospital without the required medical examination provided for by LSA-R.S. 28:52.[1]
Plaintiff was arrested on May 6, 1963, by a Sabine Parish Deputy Sheriff. On May 10, 1963, commitment papers were prepared and signed by Felix Buvens, Dr. Murdock, and Dr. Sauls. Plaintiff contends he was never examined by Dr. Murdock or Dr. Sauls as required by law. This materially differs from the statements of the Sheriff of Sabine Parish and from plaintiff's own statement in his deposition taken for trial. Plaintiff admitted Dr. Murdock saw him on May 10, 1963, while he was incarcerated in the parish jail. On May 16, 1963, plaintiff was transferred to the central Louisiana State Hospital in Pineville for treatment. On July 13, 1963, plaintiff left the hospital on a seven-day pass and failed to return.
This is an action in tort for damages resulting from a wrongful imprisonment, therefore, the applicable prescription is one year provided by Article 3536 of the Louisiana Civil Code. Defendants filed exceptions of prescription based on the allegations in plaintiff's petition which shows on its face that plaintiff's cause of action arose May 6, 1963, more than one year prior to the filing of suit. Article 3537 of the Louisiana Civil Code provides that prescription runs from the date that damages were sustained.
In Hunter v. Sisters of Charity of Incarnate Word, 236 So.2d 565 (La.App. 1st Cir., 1970), the First Circuit set out the burden of proof regarding the exception of prescription as follows:
"Generally the burden of proof rests upon the defendant pleading prescription as an affirmative defense. Succession of Thompson, 191 La. 480, 186 So. 1; Foster v. McLain, La.App., 198 So.2d 463; Ludlam v. International Paper Company, La.App., 139 So.2d 67. Where however, plaintiff's petition shows on its face that the asserted claim has prescribed, Plaintiff must allege and prove facts sufficient to show a suspension or interruption of prescription sufficient to bring the action within the prescriptive period. Kennard v. Yazoo & M.V.R. Co., La.App., 190 So. 188."
Plaintiff argues that each day of his confinement was a continuing and separate offense against plaintiff's freedom, and therefore, prescripton did not commence to run until his confinement in Central Louisiana State Hospital ceased. Plaintiff argues that the common-law doctrine "contra non valentem agere nulla currit praescriptio" applies to this case. Plaintiff also *146 argues that his incarceration in Central Louisiana State Hospital prevented his institution of an action against the defendants during period of time which he was incarcerated.
The Louisiana Civil Code, Book 3, Title 23, Chapter 3, Section 3, paragraph 6, is entitled "Of The Rules Relative To The Prescription Operating a Discharge From Debts."
Article 3551 provides:
"The prescription releasing debts is interrupted by all such cases [causes] as interrupt the prescription by which property is acquired, and which have been explained in the first section of this chapter.
"It is also interrupted by the causes explained in the following articles."
Article 3554 provides:
"Prescription does not run against minors and persons under interdiction, except cases provided by law."
Article 3522 provides:
"Minors and persons under interdiction cannot be prescribed against, except in cases provided by law."
Plaintiff argues that his incarceration under the commitment of the coroner has the effect of suspending the running of prescription against him as it does against the person formally placed under civil interdiction. The Supreme Court has rejected this argument in the case of Vance v. Ellerbe, 150 La. 388, 97 So. 735 (1922). In that case, the court held that where a person is committed to a state asylum and has never been interdicted he is not protected by Article 3522 of the Civil Code. See also Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175 (1900).
Since the mere fact that the commitment did not suspend the running of prescription against plaintiff, Louis Buvens, we examine the argument relating to the application of the common-law doctrine "contra non valentem agere nulla currit praescriptio". We find that the Supreme Court case of Cartwright v. Chrysler Corporation et al., 255 La. 598, 232 So.2d 285 (1970)) examined this doctrine which clearly applies to the situation in this case. The following quotation is provided in order to best facilitate the understanding of the application of this doctrine.
"While this court has accepted in certain limited situations the common law doctrine `contra non valentum agere nulla currit praescriptio,'3 which means that prescription does not run against a person who could not bring his suit, we do not think that plaintiff can find any comfort under the facts of this case in that doctrine. The rule that prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring suit, applies only when such ignorance is not wilful and does not result from negligence,4 and the doctrine has been limited to cases where the debtor has concealed the fact of the obligation or has committed other acts which tend to hinder, impede or prevent the creditor from ascertaining knowledge of the existence of the debt. See, Ayres v. New York Life Ins. Co., supra [219 La. 945, 54 So.2d 409]. Also, it is not necessary that the party have actual knowledge of the conditions as long as there is `constructive notice.' Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of every thing to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription.5" Footnotes omitted.
Under this rationale we conclude that plaintiff is offered no relief by this *147 doctrine. Plaintiff was not unaware of the incarceration nor was he prevented from filing suit by anyone since he was not interdicted, he still had capacity to file suit. In the testimony he gave on his deposition, plaintiff stated he contacted his attorney on the afternoon he was arrested by the Deputy Sheriff. Certainly he had more than ample opportunity to institute an action during the time he was incarcerated.
Plaintiff's contention that the offense was a continuing offense and therefore prescription only ran from the date of the last incarceration is equally of no merit. This is analogous we feel to injuries received in an accident which results in physical injury to the person. These damages occur as a result of the accident. Although the injuries continue, the period of prescription runs from the date of the accident. This is the date of the injury from which plaintiff must bring his suit. The date of injury for Louis Buvens was the date he was arrested. The running of prescription in accident cases is not suspended, except in those rare cases where either the injuries do not manifest themselves from the date of their occurrence or the person is prevented by some external means from instituting an action. This was not the case herein. The plaintiff was aware of the day he was arrested that he had suffered an injury. He was aware that he had been examined by Dr. Murdock and that the commitment papers were prepared and signed on May 10, 1963, for his commitment at the Central Louisiana State Hospital. Although he was committed during this period of time, the events which caused his damage were his arrest, and the commitment to the hospital for treatment. Plaintiff was aware of these facts and was never prevented from bringing suit.
The Civil Code clearly does not suspend the running of prescription against plaintiff's cause of action. The exception of prescription was correctly sustained by the trial court. Likewise, the doctrine of "contra non valentem agere nulla currit praescriptio" is inapplicable and affords plaintiff no relief. Since we have found that the action of plaintiff has prescribed, we do not reach the issues raised by the other exceptions and the motion filed by Dr. Murdock.
For the reasons assigned, the judgment of the trial court is hereby affirmed. Costs are assessed to plaintiff-appellant.
Affirmed.
NOTES
[1] This statute was amended by Acts 1972, No. 154, Section 1. The amended statute provides increased safeguards for the person sought to be committed under the coroner's commitment. The act additionally provides a fine and imprisonment for persons making a false application for commitment of a person.